## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LESA CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-1196-STE |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative proceedings.

## I.  PROCEDURAL BACKGROUND

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 14-25). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2003, the alleged disability onset date. (TR. 16). At step two, the ALJ determined Ms. Campbell had severe impairments of: status post thoracic outlet syndrome; chronic back pain; disorders of the lumbar spine, discogenic and degenerative; obesity; somatoform disorder; and personality disorder. (TR. 16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 17).

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a data entry clerk. (TR. 23). In doing so, the ALJ concluded that this past work did not conflict with her residual functional capacity (RFC) wherein the ALJ concluded that Ms. Campbell could:

> [P]erform light work as defined in 20 CFR 404.1567(b) except no more
> than occasional overhead reaching; and occasional stooping and kneeling.

(TR. 18).

Even though the ALJ concluded that Ms. Campbell could perform her past relevant work, he proceeded to step five. There, he presented the limitations from the RFC in a hypothetical question to a vocational expert (VE) to determine whether there

were other jobs in the national economy which Ms. Campbell could perform. (TR. 46-47). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 47-48). The ALJ adopted the testimony of the VE and concluded that Ms. Campbell was not disabled based on her ability to perform the identified jobs. (TR. 24).

## III.  ISSUES PRESENTED

On appeal, Plaintiff alleges error at step two, in the RFC, and in the credibility analysis.

## IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.  NO ERROR AT STEP TWO

At step two, Ms. Campbell alleges that the ALJ erred in failing to find severe bilateral carpal tunnel syndrome which Plaintiff contends was established by treatment notes, x-rays, pain medication, and surgical procedures on her hands. (ECF No. 13:8-

10). As a result, Ms. Campbell argues that the step two findings, which omit the carpal tunnel syndrome as a severe impairment, lack substantial evidence. (ECF No. 13:10-11). But at step two, the ALJ found that Plaintiff had at least one severe impairment, and that "was all the ALJ was required to do in that regard." *Oldham v. Astrue,* 509 F.3d 1254, 1256–1257 (10th Cir. 2007). That is, "once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue,* 340 F. App'x 481, 484 (10th Cir. 2009) (quoting 20 C.F.R. § 404.1523). Consequently, the undersigned "can easily dispose of" Plaintiff's step-two challenge. *Oldham,* 509 F.3d at 1256; *see also Brescia v. Astrue,* 287 F. App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error...."). Thus, the undersigned finds no error at step two.

## VI.   ERROR AT STEP FOUR

At step four, Ms. Campbell alleges error through the ALJ's failure to explain why the RFC omitted certain limitations assessed by State Agency consulting physician Dr. Craig Billinghurst. Ms. Campbell is correct.

**A.    The ALJ's Duty to Evaluate a State Agency Physician's Opinion in in Assessing the RFC**

Social Security Ruling 96–6p instructs:

> RFC assessments by State agency medical . . . consultants . . . are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s) . . . . [T]hey are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence.

SSR 96–6p, 1996 WL 374180, at *4 (July 2, 1996). Consequently, in assessing the RFC, the ALJ is required to evaluate, consider, and address any opinion given by a State Agency physician. *See* 20 C.F.R. § 404.1527(c); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In doing so, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996). If the RFC assessment conflicts with an opinion from a medical source, such as a State Agency physician, the adjudicator must explain why the opinion was not adopted. *Id.*

**B.    Dr. Billinghurst's Opinion**

Dr. Billinghurst completed a "Physical Residual Functional Capacity Assessment" outlining Ms. Campbell's various work-related limitations. There, the physician stated that Ms. Campbell could perform work at the light exertional level, with the following limitations: (1) no climbing ropes, scaffolds, or ladders, (2) limited bilateral overhead reaching, (3) limited bilateral handling, fingering, and feeling, and (4) no exposure to vibration or hazards. (TR. 71-73). In sum, Dr. Billinghurst stated:

> In brief, it reveals longstanding bilateral carpal tunnel and ulnar neuropathy requiring several surgical repairs with improvement. In addition, bilateral thoracic outlet syndroem [sic] with left side reduced

grips and sensation although able to perform adequate manipulation. Medically reasonable to determine that from AOD through DLI, this RFC would have been the most the claimant could have sustained.

(TR. 73).

## C. Error in the ALJ's Treatment of Dr. Billinghurst's Opinion

In his assessment of the medical evidence, the ALJ stated:

On April 8, 2013, Craig Billinghurst, M.D., State agency consultant, completed a Physical Residual Functional Capacity Assessment, which provided that the claimant can perform at the light exertional level with no climbing of ladders/ropes/scaffolds; limited left reaching left overhead and right overhead; limited handling, fingering, and feeling; avoid all exposure to vibration and hazards such as machinery and heights. The Administrative Law Judge provides great weight to these opinions.

(TR. 21). In the RFC, however, the ALJ stated that Ms. Campbell could "perform light work as defined in 20 CFR 404.1567(b) except no more than occasional overhead reaching; and occasional stooping and kneeling." (TR. 18). According to Plaintiff, the ALJ erred in omitting a portion of Dr. Billinghurst's opinions in the RFC without explanation. Specifically, Plaintiff argues that the RFC failed to account for the limitations in handling, fingering, feeling, and exposure to vibrations and hazards. (ECF No. 13:12-13). The Court agrees.

"The RFC assessment must always consider and address medical source opinions. If the . . . assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Lopez v. Colvin*, 642 F. App'x. 826, (10th Cir. 2016) (quoting SSR 96-8p, at *7). Here, the ALJ appeared to adopt Dr. Billinghurst's opinions, reciting them and then according them "great weight." (TR. 21). But a disconnect lies in the absence of an explanation regarding the ALJ's

apparent adoption of Dr. Billinghurst's opinion and the RFC which failed to account for the limitations involving fingering, handling, feeling, and exposure to hazards and vibrations. This absence of explanation constitutes legal error and grounds for reversal. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (reversing and remanding because the ALJ should have explained why he had rejected some of the consulting doctor's restrictions in the residual functional capacity "while appearing to adopt the others").

Additionally, the ALJ's mistreatment of Dr. Billinghurst's opinion undermines the ALJ's conclusions that Ms. Campbell could perform her past work of data entry clerk and other jobs including general clerk, data exam clerk, and insurance clerk. (TR. 46-48). According to the DOT, all of these jobs require "frequent" fingering and handling, and the job of data entry clerk requires "constant" fingering. *See* DOT 203.582-054 (data entry clerk), DOT 209.562-010 (general clerk), DOT 209.387-022 (data exam clerk), and DOT 219.387-014 (insurance clerk). Thus, due to the erroneous RFC, the hypothetical to the VE and the resulting findings at steps four and five were also defective and lacked substantial evidence. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (holding that the ALJ's errors in failing to include work-related limitations in the RFC rendered the resulting hypothetical to the VE "fatally defective.").

## VII.   NO ERROR IN THE CREDIBILITY ANALYSIS

Finally, Plaintiff alleges that the credibility determination lacked substantial evidence because it was based solely on a failed drug test which caused a treating

physician to dismiss Plaintiff from his care. (ECF No. 13:13-15). The Court rejects this argument.

### A. The Administrative Law Judge's Duty in Assessing Credibility

As part of the disability determination, the ALJ had to consider the evidence and decide whether he believed Ms. Campbell's subjective complaints. *See* SSR 96-7p, at *1-2 (July 2, 1996). In doing so, the ALJ had a duty to make specific findings and link them to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting the duty to "closely and affirmatively link[ ]" credibility findings to substantial evidence); SSR 96-7p, at *4 (July 2, 1996) (noting the duty to provide "specific reasons for the weight given to the individual's statements" "articulated in the determination or decision" in a manner "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight").

Besides objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's

8

functional limitations and restrictions due to pain or other symptoms. *See* SSR 96-7p, at

*3; *Keyes-Zachary*, 695 F.3d 1156, 1167 (10th Cir. 2012). However, "an ALJ is not

required to address each factor in his decision." *Duncan v. Colvin*, 608 Fed Appx. 566,

578 (10th Cir. 2015).

**B.     The Administrative Law Judge's Credibility Findings**

In assessing Ms. Campbell's credibility, the ALJ outlined the proper procedure,

summarized Plaintiff's testimony and adult function reports submitted by Plaintiff and

her husband, and made the following statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(TR. 19).

The judge then devoted two, single-spaced pages explaining how he assessed

Plaintiff's credibility. (TR. 19-21). As noted by the ALJ, he did not entirely discount or

reject Ms. Campbell's allegations, instead he found her "not *entirely* credible." (TR. 19)

(emphasis added). Clearly the ALJ at least partially believed Ms. Campbell, as he noted

that despite medication and surgical intervention, Plaintiff continued to suffer from:

- "Left cubital tunnel syndrome,"

- Reduced grip strength on her left side,

- Continued numbness in her left ulnar distribution,

- Weakness of the abductor minimi on the left,

- Severe left ulnar neuropathy at the elbow,

- Left shoulder impingement, and

- Bilateral upper extremity pain.

(TR. 19-20). Additionally, the ALJ discussed the August 13, 2007 findings from Dr. Amal Moorad noting increasing numbness when Plaintiff extended or rotated her hands, positive Tinel's and Phalen's signs, and tenderness in both elbows. (TR. 20).

Even so, the ALJ found Ms. Campbell to be only partially credible and gave her subjective symptoms "limited weight." (TR. 19, 21). In doing so, the ALJ relied on:

- A normal EMG report from February 2, 2004,

- Plaintiff's use of Neurontin for nerve function,

- Two reports from Dr. Donald Horton noting "normal cervical range of motion,"

- Surgical procedures on Plaintiff's left and right extremities which reduced numbness and tingling and was noted to be "helpful,"

- Ms. Campbell's use of a TENS unit and Lyrica, and

- Dr. Moorad's findings that Ms. Campbell "had some relief on the left with surgery."

(TR. 19-20). The ALJ also stated that the fact that Plaintiff underwent surgery for her symptoms "certainly suggests that the symptoms were genuine." (TR. 21). However, the ALJ also stated that "while that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms." (TR. 21). Finally, the ALJ discounted Plaintiff's credibility because a drug test performed by Dr. Moorad came back positive for marijuana, which violated the pain management contract between Plaintiff and Dr. Moorad, resulting in the physician dismissing Plaintiff from his care. (TR. 20). The ALJ found that Ms.

Campbell's "non-compliance with the pain management contract and treatment diminishe[d] her credibility." (TR. 20).

### C.    No Error in the Credibility Determination

According to Ms. Campbell, the ALJ committed three errors in his credibility determination. Plaintiff alleges the ALJ: (1) failed to cite any other evidence, outside of the violation of the pain management contract with Dr. Moorad, to discount Plaintiff's credibility, (2) failed to develop the record regarding Plaintiff's marijuana usage by asking her questions at the hearing, and (3) ignored evidence surrounding Dr. Moorad's dismissal of Plaintiff from his care. (ECF No. 13:15). None of these reasons have merit.

First, as previously discussed, the ALJ did not solely rely on the failed drug test as a basis for discounting Plaintiff's credibility. In addition, the ALJ relied on successful surgical procedures, Plaintiff's use of medication to help her symptoms, and treatment notes from physicians which showed improvement. (TR. 19-21).

Second, regarding the alleged failure to develop the record, Ms. Campbell cites SSR 82-59 and argues: "If the ALJ felt this one failed drug test was a material issue in the case that affected her credibility, then he is required to fully develop the record with respect to that issue by questioning the Plaintiff." (ECF No. 13:15). SSR 82-59 outlines the criteria necessary for a finding of failure to follow prescribed treatment when evaluating a claimant's disability. SSR 82-59 (1982). But SSR 82-59 is not applicable here, as the ALJ did not conclude that Ms. Campbell failed to follow a particular course of treatment prescribed by Dr. Moorad, only that Plaintiff had violated her pain management contract with him through her use of illicit drugs. (TR. 20). The ALJ was

entitled to rely on this evidence as a basis for discounting Plaintiff's credibility. *See*

*Adams v. Colvin*, 553 F. App'x. 811, 815-816 (10th Cir. 2014) (no error in ALJ's reliance

on Plaintiff's marijuana usage as a basis for discounting credibility); *Kackley v. Colvin*,

2015 WL 4724539, at *6-7 (D. Kan. 2015) (in assessing credibility, no error in the ALJ's

reliance on the fact that the claimant would not be prescribed pain medication due to

her continued marijuana use).

Finally, Ms. Campbell argues that the ALJ ignored the fact that Plaintiff was

remorseful for using marijuana and had used it for chronic pain. This statement is

untrue, as in the written decision the ALJ noted that Ms. Campbell had "said she had

been using marijuana to help because she thinks it helps to relax her and helps with the

pain." (TR. 20).

The ALJ acknowledged Plaintiff's subjective allegations, but properly discounted

Ms. Campbell's credibility with a detailed explanation which was supported by

substantial evidence. The ALJ relied on Plaintiff's use of medication, successful surgical

intervention, findings from various treating physicians, and the violation of her pain

management contract as support for concluding that Ms. Campbell was "not entirely

credible." (TR. 19-21). The ALJ fulfilled his duty to assess Plaintiff's credibility and was

required to do no more.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the

administrative hearing, the decision of the ALJ, and the pleadings and briefs of the

parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and

**REMANDS** the matter for further administrative findings.

ENTERED on October 4, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE